NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHIPYARD ASSOCIATES, L.P., | Civil Action No. 14-1145 (CCC) |
| Plaintiff, | |
| v. | |
| CITY OF HOBOKEN, | OPINION |
| Defendant. | |

**FALK, U.S.M.J.**

This Section 1983 action was brought by Shipyard Associates, L.P., a developer, against the City of Hoboken to invalidate two municipal ordinances. Before the Court is a motion by Fund for Better Waterfront ("FBW"), a nonprofit public interest group, to intervene as a party defendant pursuant to Federal Rule of Civil Procedure 24. [ECF No. 17.] Shipyard opposes the motion. [ECF No. 21.] No argument was heard. Fed. R. Civ. P. 78(b). For the reasons that follow, the motion is **GRANTED**.

**BACKGROUND**

Plaintiff Shipyard Associates, L.P. is a developer and the owner of property along the Hoboken waterfront, which includes real property that is on piers and platforms extending into the Hudson River. Defendant is the City of Hoboken. The parties have an

extensive and litigious history dating back to 1996 (including prior state court actions), which primarily focuses on Shipyard's desire to construct a residential project consisting of two, eleven-story towers and related parking.[1]

In December 2013, following the aftermath of Superstorm Sandy, Hoboken adopted two municipal Ordinances addressing issues relating to flooding in Hoboken.[2] These Ordinances, among other things, prohibit construction on properties that are located on piers and platforms that project into the Hudson River. The effect of these Ordinances is to prevent construction of the Monarch Project.

On February 21, 2014, Plaintiff filed its Complaint against Hoboken, alleging that Hoboken's adoption and implementation of the Ordinances was arbitrary and capricious, *ulta vires*, and unenforceable. [ECF No. 1.] On March 18, 2014, Hoboken answered the Complaint.

On June 13, 2014, FBW filed the present motion to intervene as a party defendant. [ECF No. 17.][3] FBW is a nonprofit organization comprised of Hoboken residents

---

[1] The parties refer to this proposed development as "the Monarch at Shipyard."

[2] The Ordinances are: Ordinance Z-263, entitled An Ordinance Amending Chapter section 104 (Flood Damage Prevention), and Ordinance Z-264, entitled An Ordinance Amending Chapter 196 (Zoning) Addressing Community Health, Safety and General Welfare Through Flood Hazard Mitigation Measures and Development (collectively, the "Ordinances"). Copies of the Ordinances are attached to the Complaint as Exhibits A and B.

[3] As required by Federal Rule of Civil Procedure 24(c), FBW has attached a proposed answer to its motion. [ECF No. 17-4.]

focused on issues such as open space preservation and recreation along the Hudson River waterfront in Hoboken. (Declaration of Ron Hine ("Hine Decl."), ¶ 2.)[4]

FBW claims that it is entitled to intervene as a defendant in this case as "a matter of right" pursuant to Federal Rule of Civil Procedure 24(a); alternatively, it claims that "permissive" intervention pursuant to Rule 24(b) is appropriate. As is discussed herein, FBW was founded in 1990 and has for many years been an active advocate for enhancing public access to the Hudson River within Hoboken. (Hine Decl., ¶¶ 2, 6-7.) FBW, which has successfully advocated against development proposals in the past, claims that its 24-year old mission would be seriously compromised if the Ordinances are invalidated. (Hine Decl., ¶¶ 11, 14, 16.)

Shipyard opposes the motion, contending that the FBW has failed to establish the necessary grounds to support intervention.[5] Shipyard argues, in particular, that FBW does not have a sufficient, legally recognized interest in the litigation, and that any interest they could have is adequately represented by the City of Hoboken.

## DISCUSSION

A.  **Intervention As of Right – Rule 24(a)**

Federal Rule of Civil Procedure 24(a), as interpreted by the Third Circuit, provides

---

[4] Mr. Hine is the Executive Director of FBW. (Hine Decl., ¶ 3.)

[5] Hoboken has not filed any papers with respect to FBW's motion. In addition, on August 14, 2014, a second motion to intervene was filed by the Hudson Tea Buildings Condominium Association, Inc., which is an Association situated on the property immediately adjacent to the site of the proposed Monarch Project. [ECF No. 25.] Shipyard has also opposed that motion. It will be addressed separately.

3

that a non-party has a right to intervene in pending litigation if:

> (1) the application for intervention is timely;
> (2) the applicant has a sufficient interest in the litigation;
> (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and
> (4) the interest is not adequately represented by an existing party in the litigation.

See Mountain Top Condo Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 365-66 (3d Cir. 1995). The moving party bears the burden of establishing the right to intervene, and failure to satisfy any one of the four factors justifies denial of the request. See, e.g., id.; United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1181 n.9 (3d Cir. 1994); Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987).

Shipyard does not dispute that FBW's application is timely. Shipyard disputes the remaining factors, which are addressed below.

### i. **Sufficient Interest In the Litigation**

The standard for whether or not the movant has a sufficient interest is whether "the claimed interest in the litigation . . . is specific to those seeking to intervene, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." Benjamin v. Dep't of Pub. Welfare, 701 F.3d 938, 951 (3d Cir. 2012). A "mere general interest in the subject matter of litigation" is not enough; rather a "protectable interest" must be at stake. Mountain Top Condo Ass'n, 72 F.3d at 366. The Third Circuit has described the relevant inquiry as flexible and fact specific:

> Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise. [T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. . . .

4

> [T]he facts assume overwhelming importance in each decision.

Kleissler v. Ridgway Area School District, 157 F.3d 964, 972 (3d Cir. 1998).

FBW claims that it has a significantly protectable interest in this case, including "a specific interest to support the Ordinances that protect Hoboken from flood hazards from the Hudson River; and promote public access, open space and recreation along the Hoboken waterfront." (Mov. Br. 15-16.) FBW relies heavily on a case from the Middle District of Pennsylvania, Amer. Farm Bureau Fed. v. United States Environmental Protection Agency, 278 F.R.D. 98 (M.D. Pa. 2011), to support the argument that it has a protectable interest. The case is persuasive.

In Amer. Farm, a group of plaintiffs commenced an action against the EPA seeking to vacate the agency's administrative regulations governing the maximum amount of pollutant that a water body can receive. Id. at 100-01. A number of public interest and environmental advocacy groups were granted Rule 24 intervention as of right to permit them to appear as defendants and support the EPA's regulations. The plaintiff groups asserted protected interests in, *inter alia*, "the restoration of natural resources"; "protecting past and present efforts supporting the reduction of pollutant loads"; and "preserving the proper proportional allocation of pollutional loads." Id. at 106-07. The Court agreed such concerns constituted protected interests for purposes of Rule 24:

> [T]he proposed intervenors have an interest in efforts affecting the Bay, not only because the groups' individual members utilize the Bay and its tributaries for recreational and aesthetic purposes, but also because such efforts go to the core mission of the groups. Given their past legal, educational, and physical efforts geared toward protecting and restoring the Bay, and the personal use and enjoyment of the

5

> Bay by the groups' individual members, the court finds that these groups have demonstrated a legally protectable interest in the outcome of this case.

Id. at 107.   So too here.

FBW is a non-profit entity founded 24 years ago. (Hine Decl., ¶ 2.) It has 200 active supporters, most of whom are residents of Hoboken and have an interest in flood prevention and open space in their city. (Hine Decl., ¶ 5.) Since its founding, FBW has advocated against new construction on the piers along the Hudson River. (Hine Decl., ¶¶ 7-9, 15.) FBW's advocacy efforts specifically included the Ordinances at issue in this litigation. For example, Mr. Hine certifies that he met with the Hoboken Mayor in January 2013, to discuss flood insurance. (Hine Decl., ¶ 32.) He also explains that FBW sponsored an event entitled, *The Storm Next Time*: *Will Hoboken Be Ready?*, the purpose of which was to "provide Hoboken's residents with on-going access to current information on the scope of the flooding problems and the progress made in creating solutions." (Hine Decl., ¶ 33.) FBW has also "provided input to the legislative hearings involved in flood protection investigations as well as supporting and providing input to Hoboken who is involved in this litigation." (Mov. Br. 16; see also Hine Decl., ¶ 35 ("I attended and spoke at June 10, 2013 public hearing before the New Jersey Assembly Environment Committee in opposition to an assembly bill that would have allowed new construction on piers along the Hudson River"); ¶ 47 ("FBW has been generally supportive of all of the efforts by [Hoboken], including the passage of the [Ordinances].").) Moreover, FBW was previously granted intervention in a 2012 New Jersey state court litigation that Hoboken brought against Shipyard seeking to enforce

aspects of the developer's agreement relating to the same property involved in this litigation. (Hine Decl., ¶ 27.)[6]

FBW's core principles; its membership comprised largely of Hoboken residents; its advocacy efforts focused on open space and flood related issues in Hoboken;[7] and its public support of the Ordinances amount to a sufficient legally protectable interest to support intervention. See id.; see also Prete v. Bradbury, 438 F.3d 949, 954 (9th Cir. 2006) (noting that "a public interest group [is] entitled as a matter of right to intervene in an action challenging the legality of a measure which it had supported."). Shipyard's contention—that FBW's real interest is in "open space" and this case deals with flooding—is parsing too fine a line when looking at FBW's overall objectives and its diverse advocacy efforts. Based on the above, the Court finds that FBW has a legally protectable interest. This factor is satisfied.[8]

---

[6] Shipyard separately notes that FBW (and others) were denied an adjudicatory hearing by the New Jersey Department of Environmental Protection on a 2011 Shipyard application for a Waterfront Development Permit. (Certification of Josiah Wuestneck, ¶¶ 8, 15.) That decision is presently on appeal. (Wuestneck Cert., ¶ 16.) Shipyard essentially equates this administrative decision to denial of a request to intervene. While that comparison is noted, the administrative process is sufficiently distinct from federal civil litigation such that the denial is not of substantial importance to this motion.

[7] (Hine Decl., ¶¶ 33, 35, 37)

[8] Shipyard only addresses the third factor—whether a recognized interest will be affected or impaired—in passing in their brief and in a footnote. (See Pl.'s Br. 16 & n.6.) FBW's burden of showing impairment is "minimal," Mountain Top, 72 F.3d at 368, and the proposed intervenor need only show that "impairment of its substantial legal interest is *possible* if intervention is denied." Utah Assoc. of Counties, 255 F.3d 1246, 1253 (10th Cir. 2001). Courts are "free to look at the realistic and practical consequences of a potential ruling, not just the affects of the resolution on a narrowly tailored legal issue." Amer. Farm, 278 F.R.D. at 108 (citing Dev. Fin. Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d

### ii.     Whether the Interest is Adequately Represented by an Existing Party

The final hurdle FBW must clear is to establish that their interests are not adequately represented by an existing party—i.e., the City of Hoboken.  See Fed. R. Civ. P. 24(a); Mountain Top, 72 F.3d at 365-66.  In general, the burden associated with that showing "should be treated as minimal." Benjamin v. Dep't of Public Welfare, 701 F.3d at 958; see also Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972).  Intervention is prohibited if the intervening and existing parties have identical interests.  See Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir. 1982).  There is a "general presumption that a government entity is an adequate representative."  Id.  However, "the presumption notwithstanding, when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light." Kleissler, 157 F.3d at 972.

Shipyard argues that any interest FBW has is more than adequately protected by the City of Hoboken.  It relies on the decade plus litigation history between it and the City as proof that Hoboken can be counted on to defend its Ordinances.  FBW counters that its interests are generally aligned with Hoboken but are not identical.  It points to Hoboken's delicate position as the entity with the police power to protect residents and the entity responsible for managing and interacting with municipal planning, zoning, and development interests.  It also claims that Hoboken has, at times, shown an unwillingness

---

156, 162 (3d Cir. 1995)).  Even though this issue is only tangentially raised, it seems clear that invalidation of the Ordinances would affect or impair FBW's interest—not only relating to flooding, but open and public space.  This factor is easily satisfied.

to implement what FBW believes are necessary restrictions to prevent flood hazards.

The Court is satisfied that FBW has established the "possibility" that Hoboken will not adequately represent its interests. The record submitted does suggest that Hoboken has defended its Ordinances. However, FBW is more concerned about the future. It notes that the continued defense of the Ordinances depends, at least in part, on the Mayor and City Council "having the political will to sustain a defense[,]" and that "[c]urrently the Hoboken City Council is sharply divided politically, with opponents of the mayor being highly critical of the City's efforts." (Hine Decl., ¶ 49.)

In contrast to the possibility of a change in the political tide, FBW describes itself as "committed for the long term to a defense of the Ordinances and the concept of a public waterfront." (Id.) Such concerns are a valid basis to raise the mere "possibility"—which is all that is required—that FBW and Hoboken could have distinct interests that Hoboken may not be positioned to fully protect. See, e.g., Kleissler, 157 F.3d at 974 ("Although it is unlikely the that the intervenors' economic interests will change, it is not realistic to assume the agency's programs will remain static or unaffected by unanticipated policy shifts.").

Finally, the Court also agrees with FBW that Hoboken could arguably be construed to have conflicting interests arising out of the myriad of responsibilities attendant to any municipality. This plausible conflict has been found by some courts as noteworthy in evaluating whether intervenors' personal interests diverge from those of their governmental allies. See, e.g., Kleissler, 157 F.3d at 973-74 ("[T]he government represents numerous complex and conflicting interests in matters of this nature. The

straightforward business interests asserted by intervenors' here may become lost in the thicket of sometimes inconsistent governmental policies."); see also Dimond v. District of Columbia, 792 F.2d 179, 192-93 (D.C. Cir. 1986); Amer. Farm, 278 F.R.D. at 110-11.

Based on the above, FBW has carried its burden to show the possibility that its interests will not be fully protected by the City of Hoboken. Therefore, this factor is satisfied.[9]

## CONCLUSION

Based on the above, all of the requirements for intervention as of right pursuant to Rule 24(a) have been established. Therefore, FBW's motion to intervene [ECF No. 17] is **GRANTED**. FBW's proposed responsive pleading should be filed within 3 business days.

                                        s/Mark Falk
                                        **MARK FALK**
                                        **United States Magistrate Judge**

**DATED: November 26, 2014**

---

[9] Because the Court has found that FBW has shown the right to intervene under Rule 24(a), there is no need to analyze permissive intervention under Rule 24(b). However, it is enough to say that permissive intervention is a discretionary decision that involves practical considerations. See, e.g., McKay v. Heyison, 614 F.2d 899, 906 (3d Cir. 1980); Fed. R. Civ. P. 24(b)(2) (permissive intervention allowed "when an applicant's claim or defense and the main action have a question of law or fact in common"); Klitzmiller v. Dover Area Sch. Dist., 229 F.R.D. 463, 471 (M.D. Pa. 2005) (noting that permissive intervention involves consideration of "whether the proposed intervenors will add anything to the litigation"). FBW will add a valuable perspective and voice to this litigation. Moreover, FBW's joining in this action will not delay the case or prejudice any party. The requirements of permissive intervention are clearly met.