<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SHIPYARD ASSOCIATES, L.P.,** | **Civil Action No. 14-1145 (CCC)** |
| **Plaintiff,** | |
| **v.** | |
| **CITY OF HOBOKEN,** | **<u>OPINION</u>** |
| **Defendant.** | |

<u>**FALK, U.S.M.J.**</u>

     This Section 1983 action was brought by Shipyard Associates, L.P., a developer, against the City of Hoboken to invalidate two municipal ordinances.  Before the Court is Shipyard's request to compel the production of documents withheld as privileged.  [ECF No. 59.]  The application is opposed.  [ECF No. 62.]  No argument was heard.  Fed. R. Civ. P. 78(b).  For the reasons that follow, the application is **GRANTED IN PART AND DENIED IN PART**.

**I.**     <u>**BACKGROUND**</u>

     **A.**     <u>**Introduction**</u>

     Plaintiff Shipyard Associates, L.P. is a developer and the owner of property along the Hoboken waterfront, which includes real property that is on piers and platforms extending into the Hudson River.  Defendant is the City of Hoboken.  The parties have a history dating back to 1996 (including prior and current state court actions), which primarily focuses on Shipyard's

desire to construct a residential project consisting of two, eleven-story towers and related parking.[1]

In December 2013, following the aftermath of Superstorm Sandy, Hoboken adopted two municipal Ordinances addressing issues relating to flooding in Hoboken.[2]  These Ordinances, among other things, prohibit construction on properties that are located on piers and platforms that project into the Hudson River.  The Ordinances have prevented construction of the Monarch Project.

On February 21, 2014, Shipyard filed its Complaint against Hoboken, alleging that Hoboken's adoption and implementation of the Ordinances was arbitrary and capricious, *ulta vires*, and unenforceable.  [ECF No. 1.]  Shipyard's contention is that the Ordinances were passed to halt the Monarch Project.  On March 18, 2014, Hoboken answered the Complaint.[3]

At present, the parties have briefed a discovery dispute over the production of allegedly privileged documents.  In some ways, this dispute has been percolating since the beginning of the case as described below.

---

[1] The parties refer to this proposed development as "the Monarch at Shipyard."

[2] The Ordinances are: Ordinance Z-263, entitled An Ordinance Amending Chapter section 104 (Flood Damage Prevention), and Ordinance Z-264, entitled An Ordinance Amending Chapter 196 (Zoning) Addressing Community Health, Safety and General Welfare Through Flood Hazard Mitigation Measures and Development (collectively, the "Ordinances").  Copies of the Ordinances are attached to the Complaint as Exhibits A and B.

[3] After issue was joined, two entities—Fund for Better Waterfront ("FBW") and  Hudson Tea Buildings Condominium Association ("Hudson Tea")—made motions to intervene in the case as intervenor-defendants, which Shipyard opposed.  FBW is a nonprofit organization comprised of Hoboken residents focused on issues such as open space preservation and recreation along the Hudson River waterfront in Hoboken.  The Court granted FBW's motion to appear in this case as an intervenor-defendant on November 26, 2014.  Hudson Tea is situated directly adjacent to Shipyard's proposed Monarch project.  It was granted intervenor-defendant status on February 10, 2015.

B.      **Disputed Scope of Discovery in This Case**

Since the outset of the case, the parties informally disputed the proper scope of discovery

in this case, which is focused on the propriety of state legislative action.

Hoboken initially argued that no discovery was appropriate in this case beyond the

Hoboken City Council official record.  [ECF No. 14 at 3.]

Shipyard sought fairly extensive discovery well beyond the Hoboken official record,

including requests for legislators' personal text messages, emails of Hoboken's individuals

officers and employees, and depositions.  The parties were directed to meet and confer, and if

agreement could not be reached, submit letters to the Court.

On September 12, 2014, Hoboken submitted a letter objecting to nearly all discovery in

this case beyond the Hoboken legislative record.  Hoboken reiterated its narrow view of what

type of discovery should be permitted:

> Hoboken [objects to discovery] because the validity of a municipal
> ordinance is to be determined on the basis of the objective effect of
> its terms — the subjective motives and mental processes of the
> individuals who drafted the ordinance or the government officials
> who decided to adopt it are **irrelevant**.  By way of discovery in this
> action, Hoboken has provided Shipyard with a complete copy of all
> the documents and other materials which comprise the record of
> the Hoboken City Council's decision to adopt the ordinances.

(Letter dated September 12, 2014, at 2.)

Hoboken's argument then was that the type of discovery Shipyard was seeking was not

"relevant," as that term is used in the Rule 26 context, to the claims and defenses in this case.[4]

---

[4] "Relevance" is a well-known concept.  In short, Rule 26 allows for discovery of any matter
relevant to a party's claims or defenses.  See Fed. R. Civ. P. 26(b).  Rule 26 is construed
liberally. See Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc., 92 F.R.D. 371, 375 (D.N.J.1981).
Relevance is a broader inquiry at the discovery stage than at the trial stage. See Nestle Food
Corp. v. Aetna Cos. & Surety Co., 135 F.R.D. 101, 103 (D.N.J.1990).  "Relevant information
need not be admissible at the trial if the discovery appears reasonably calculated to lead to the
discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  The burden is on the party seeking

(Id.)  Hoboken's argument was understandable, since the Third Circuit has made clear that the motives of those that pass legislation are irrelevant if the Township had other legitimate state interests in passing the legislation.  See, e.g., County Concrete Corp. v. Township of Roxbury, 442 F.3d 169, 170 (3d Cir. 2006); County Concrete Corp. v. Township of Roxbury, 2009 WL 872215, at *4 (D.N.J. Mar. 30, 2009) ("Because the Court finds that the Township had a legitimate interest in passing the Ordinance, it is irrelevant whether or not it was also passed with improper motives").[5]

Claiming that it had an obvious state interest served by the Ordinances—flood prevention and protection in light of the destructive Hurricane Sandy—Hoboken requested that "in the event the Court finds any particular claims asserted by Shipyard in its Complaint justify discovery . . . . permission [be granted] to file a dispositive motion as to such claims."  (Def.'s September 12, 2014 Letter at 23.)

Shipyard effectively conceded that inquiry into the "motives" of legislators was impermissible in a case like this.  (Pl.'s Letter dated September 23, 2014, at 15.)  Yet, it argued that at least some discovery should be allowed into the "purpose" behind the Ordinances and that "it is simply impossible for either the Court or Shipyard to know — without examining the requested documents – whether Hoboken is currently holding materials relevant to 'purpose'

_____

discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J.2000); see also Nestle, 135 F.R.D. at 104.  Although construed liberally, Rule 26 is not limitless—e.g., the Court may limit discovery when the burden is likely to outweigh the benefits. See Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999).

[5] This creates a high bar for prevailing on a facial substantive due process challenge to a legislative act – a plaintiff must "allege facts that would support a finding of arbitrary or irrational legislative action by the Township." County Concrete, 442 F.3d at 169.

rather than 'motive'."  (Id.)

Hoboken did not challenge the sufficiency of the Complaint.  Since there appeared to be a factual dispute on the face of the pleadings, and also because discovery has been allowed in similar cases prior to summary judgment (including *County Concrete, supra*), the Court was not prepared to exclude any discovery.  The parties were directed to confer.  Hoboken's counsel was encouraged to reexamine documents in its possession and determine if there were some limited materials—focused on the "purpose" of the Ordinances—that could be produced to swiftly move this case forward.  This was a suggested compromise position; no rulings regarding the relevance of Shipyard's specific discovery requests was ever presented or decided.

### C.    Shipyard's Request to Compel

Eventually, Shipyard advised the Court that a large number of documents were being withheld by Hoboken on various privilege grounds—i.e., the attorney-client privilege; the work product doctrine; the common interest doctrine; and the deliberative process privilege—which it claimed was improper.  The Court authorized informal briefs to be submitted and for Shipyard to select representative samples from Hoboken's privilege log for *in camera* review.

The concept was that the Court would review the samples and make "representative" rulings, which could then be applied to any similar documents being withheld—a technique that this and other courts have used when there are large numbers of privileged documents in dispute. See, e.g., E.I. du Pont de Numours & Co. v. MacDermid, Inc., 2009 WL 3048421, at *1 (D.N.J. Sept. 17, 2009); La Mun. Police Empl. Ret. Sys. v. Sealed Air, 253 F.R.D. 300, 304-05 (D.N.J. 2008); In re Gabapentin Patent Litig., 214 F.R.D. 178, 181 & n.1 (D.N.J. 2004).

### D.    The Current Briefing

In April 2015, the parties submitted informal briefing of their dispute.  Shipyard seeks the production of seven groups of documents—identified as "Categories" "A" through "G."  To

arrive at Categories A through G, Plaintiff apparently reviewed all 472 entries on Hoboken's 96-page privilege log and assigned each document to one of 7 categories. Then, from each of those seven categories, Shipyard selected a number of samples for the Court to review *in camera*. 44 total samples were selected. The Court received the samples on June 30, 2015.

However, the parties' briefs are not what the Court requested—i.e., briefs on targeted privilege issues. The briefs do not provide the specific discovery requests in dispute. There is no meaningful discussion of the relevance of the disputed documents, even though it appears to be in dispute. Indeed, Shipyard assumes that all the documents sought in the motion are relevant,[6] which is not something that this Court has ever decided, and Hoboken apparently continues to dispute.[7]

More problematic is the fact that, for reasons unknown, the parties do not address the same samples. Thus, Hoboken fails to address the actual samples Shipyard selected for the Court to review. Instead, the City simply selects the first five documents in each of Categories A through G. The result is that Hoboken's brief does not address any of the samples Shipyard selected and this Court reviewed *in camera*; but rather, addresses other documents that have not been selected. In some ways, the parties' briefs are like ships passing in the night. The consequence is that there are many arguments that are simply unaddressed, which makes it difficult in the context of important issues like attorney-client privilege.

\* \* \*

Given the above, the Court has struggled with how best to proceed. In an attempt to

---

[6] See, e.g., Pl.'s Reply Br. at 1 ("[T]he relevant standard is whether the documents sought by Shipyard are relevant (which has been established) and privileged." ).

[7] See, e.g., Def.'s Opp'n Br. at 1 ("Since the commencement of this action, Hoboken has maintained that the scope of relevant discovery herein is limited to the documents comprising the record of the Hoboken City Council's public hearing on the ordinances . . . .").

decide what can be decided and provide guidance to the parties, here is what follows.  First, the general legal standards relating to the privileges that are raised in the parties' briefs.  Second, the Court addresses four preliminary privilege questions Shipyard has briefed.  Third, the Court has reviewed the representative samples and made decisions on each the best it can under the circumstances.

## II.   GENERAL LEGAL STANDARDS

### A.   Attorney-Client Privilege[8]

The purpose of the attorney-client privilege is to "encourage full and frank communications between attorneys and their clients."  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  The privilege is founded upon "the necessity, in the interests and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or apprehension of disclosure."  Hunt v. Blackburn, 128 U.S. 464, 470 (1888).

The Third Circuit has enumerated the elements of the privilege as follows:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979).

---

[8]  This case has both federal and state law claims.  Under such circumstances, the federal common law of privilege applies.  See Wm. T. Thompson v. General Nutrition Corp., Inc., 671 F.2d 100, 103 (3d Cir. 1982).

The party asserting the attorney-client privilege bears the burden to show that it applies. See In re Grand Jury Empanelled Feb. 14, 1978, 603 F.3d 469, 474 (3d Cir. 1979).  While it is true that the attorney-client privilege is narrowly construed because it "obstructs the truth-finding process," Westinghouse Elec. Corp. v. Republic of the Phillippines, 951 F.2d 1414, 1423 (3d Cir. 1991), the privilege is not "disfavored."  In re Teleglobe Commc'ns Corp., 493 F.3d 345, 361 n.13 (3d Cir. 2007).  Courts should be cautious in their application of the privilege mindful that "it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege."  Fisher v. United States, 425 U.S. 391, 403 (1976).  In all instances, the facts underlying any given communication remain discoverable.  See Upjohn, 449 U.S. at 395-96 ("Protection of the privilege extends only to communications not to facts.").

Communications which relate to business rather than legal matters do not fall within the protection of the privilege."  Leonen v. Johns-Manville, 135 F.R.D. 94, 98 (D.N.J. 1990).  Therefore, the general rule is "while legal advice given to a client by an attorney is protected by the privilege, business advice generally is not."  In re Nat'l Smelting of New Jersey, Inc. Bondholders' Litig., No. 84-3199, 1989 U.S. Dist. LEXIS 16962, at *18 (D.N.J. June 29, 1989) (citation omitted).

While this rule seems simply stated, its application is much less so; the reason being, "in the corporate community, legal advice 'is often intimately intertwined with and difficult to distinguish from business advice.'" Leonen, 135 F.R.D. at 98-99 (quoting Sedco Int'l SA v. Cory, 683 F.2d 1201, 1205 (8th Cir. 1982)).  Because it is "often too difficult, impractical and unrealistic to compartmentalize whether certain advice given to a client is legal in nature or business in nature . . . the policy behind the attorney-client privilege is best upheld . . . where the attorney-client relationship is predominantly for the purpose of rendering legal services."  In re Nat'l Smelting, 1989 U.S. Dist. LEXIS 16962, at **21-22.

The proper inquiry in the business versus legal context "is focused on whether the communication is designed to meet problems which can fairly be characterized as predominately legal." Leonen, 135 F.R.D. at 99.   In order to meet this standard, the claimant should demonstrate "that the communication would not have been made but for the client's need for legal advice or services." Leonen, 135 F.R.D. at 99 (quotations omitted).   Merely "cc'ing" an email to an attorney is clearly insufficient to establish the privilege.  See In re Avantel, 343 F.3d 311, 321 (5th Cir. 2003).  In other words, "emails in which in-house or outside attorneys are merely sent copies of the text of the email, or in which they are merely one of many addresses, should not be privileged, unless the email is directed to the attorney or sent by the attorney . . . ." Id. at 321 n.11 (citation omitted).   Finally, if a communication (such as an email) is privileged but contains attachments, "each attachment must individually satisfy the criteria for establishing the privilege.  Merely attaching something to a privileged document will not, by itself, make the attachment privileged." Leonen, 135 F.R.D. at 98.

### B.   The Work-Product Doctrine[9]

The federal work-product doctrine is set forth in Federal Rule of Civil Procedure 26(b)(3), which provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, idemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

---

[9] The work product doctrine is governed, in all cases, by a uniform federal standard. United Coal Cos. v. Powell Const. Co., 839 F.2d 958, 966 (3d Cir. 1988).

Fed. R. Civ. P. 26(b)(3).  The doctrine itself  "shelters the mental processes of the attorney,

providing a privileged area within which he can analyze and prepare his client's case."  In re

Cendant Corp. Sec. Litig., 343 F.3d 658, 661-62 (3d Cir. 2003) (quoting United States v. Nobles,

422 U.S. 225, 238 & n.11 (1975)).

The party asserting work product protection bears the burden to show the doctrine

applies.  See Conoco, Ins. v. U.S. Dep't of Justice, 687 F.2d 724, 730 (3d Cir. 1982).  Courts in

this Circuit have adopted a "two part test for ascertaining whether the documents (or things) at

issue should be protected under the [work-product doctrine]."  In re Gabapentin Patent Litig., 214

F.R.D. 178, 183 (D.N.J. 2003).

The first inquiry is the "reasonable anticipation test," which requires that the court

determine whether "litigation could reasonably have been anticipated."  In re Gabapentin, 214

F.R.D. at 183.  "[T]he relevant inquiry is 'whether in light of the nature of the document and the

factual situation in the particular case, the document can fairly be said to have been prepared or

obtained because of the prospect of litigation.'"  Maertin v. Armstrong World Indus., 172 F.R.D.

143, 148 (D.N.J. 1997) (quoting Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252,

1258 (3d Cir. 1993) (citing United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir.

1990))).  Although the litigation need not be imminent, Rockwell, 897 F.2d at 1266, "there must

be an identifiable specific claim of impending litigation."  Maertin, 172 F.R.D. at 148 (quoting

Leonen, 135 F.R.D. at 97).

The second inquiry is whether the documents were prepared "primarily for the purpose of

litigation."  Paris, 2006 WL 1982876, at *2.  "Documents prepared for other purposes that prove

useful in subsequent litigation are not attorney work-product."  In re Gabapentin, 214 F.R.D. at

184.  Accordingly, documents created in the ordinary course of business, even if useful in

subsequent litigation, are not protected by the work-product doctrine.  See Rockwell, 897 F.2d at 1265-66.  Ultimately, "[e]ven where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work-product [doctrine] still depends primarily on the reason or purpose for the documents production."  In re Gabapentin, 214 F.R.D. at 184.

### C.      The Common-Interest Doctrine

The common-interest, or community-of-interest, doctrine allows "*attorneys* representing different clients with similar legal interests to share information without having to disclose it to others."  In re Teleglobe Commc'ns Corp., 493 F.3d 345, 364 (3d Cir. 2007) (emphasis added).  If applicable, the doctrine protects communications "made between attorneys when all members of the community share a 'common legal interest' in the shared communication."  Id. at 364 (emphasis added).  The common-interest doctrine is not an independent privilege, but rather, an exception to the general rule that disclosure of a privileged communication to a third-party waives the privilege.  See, e.g., Cavallaro v. United States, 284 F.3d 236, 250 (1st Cir. 2002) ("The common interest doctrine . . . is not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third-party." (quotation omitted)).  The degree of common legal interest required to qualify under the doctrine is the subject of some debate, ranging from "substantially similar" to "identical."  See, e.g., La. Mun. Police Empl. Ret. Sys. v. Sealed Air, 253 F.R.D. 300, 309-10 (D.N.J. 2008) (substantially similar legal interests sufficient); Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146, 1172 (D.S.C. 1974) (identical interests required).  The burden to show the privilege has not been waived, and thus, that the doctrine applies, rests with the party resisting disclosure.  See Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, LLC, 202 F.R.D. 418, 423 (E.D. Pa. 2001).

### D.        Deliberative Process Privilege

The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.   Dep't of Interior v. Klamath Water Users Ass'n, 532 U.S. 1, 8 (2001).  The purpose of the privilege is to prevent injury to the quality of agency decisions which could result from the premature or indiscriminate disclosure of deliberations comprising part of a process by which government decisions and policies are formulated.  Delaware Riverkeeper Network v. Delaware River Basin Com'n, 300 F.R.D. 207, 214 (D.N.J. 2014).  "The privilege recognizes that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer."  Id.  Accordingly, the deliberative process privilege "permits the government to withhold documents containing confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice."  Reid v. Cumberland County, 34 F. Supp. 3d 396, 405-06 (D.N.J. 2013).  The documents sought to be protected must be pre-decisions and deliberative in nature.  Delaware Riverkeeper Network, 300 F.R.D. 211.

In order for the deliberative process privilege to apply, the government must: (1) formally claim the privilege after considering the matter; (2) provide the reasons for asserting the privilege over the government information or documents at issue; and (3) identify and describe the government information or documents sought to be shielded from disclosure.  Id. at 211.

### III.   DECISION

### A.   Shipyard's General Arguments

#### 1.        Hoboken is Entitled to Assert the Attorney-Client Privilege

Shipyard's first argument is Hoboken should not be able to assert the attorney-client privilege at all because Maraziti Falcon, LLP (Hoboken's counsel of record) was merely

"providing administrative or business rather than legal advice."  (Pl.'s Br. 6.)  However, this appears to be mere speculation supported by reference to a few documents Shipyard has received in response to discovery requests that supposedly show the Maraziti firm undertaking certain non-legal, administrative tasks.

Shipyard's argument fails.  Whether a firm is providing business or legal advice is generally considered on a communication-by-communication basis.  Shipyard's generalized assertion, based on the review of a few documents that Hoboken produced precisely *because* they were business and not legal, is no basis for a broad finding that the Maraziti Firm was not providing legal services in this case.  Indeed, a review of the *in camera* documents submitted supports the opposite.

### 2.   Hoboken is Entitled to Assert the Work-Product Doctrine

Shipyard next argues that Hoboken's assertion of the work-product doctrine is improper, across the board, because the documents for which Hoboken is asserting the work product protection were "presumably not prepared in anticipation of this litigation," as well as because protection has been waived or otherwise put in issue.  **(**Pl.'s Br. 8.)

Shipyard's arguments again fail.  That litigation had not yet begun when the withheld documents were created is not dispositive.  See In re Grand Jury, 599 F.3d at 1229 ("Indisputably, the work-product doctrine extends to material prepared or collected before litigation actually commences.").  The pertinent inquiry is whether litigation was reasonably anticipated.  See In re Gabapentin, 214 F.R.D. at 183.  This inquiry can be satisfied well in advance of actual litigation.  As the Second Circuit Court of Appeals has noted, "[i]n many instances the expected litigation is quite concrete, notwithstanding that the events giving rise to it have not yet occurred."  United States v. Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995).

 As to waiver, work-product protection is lost only when a disclosure enables an

adversary to gain access to the information.  See Westinghouse, 951 F.2d at 1428; Maldonado v. New Jersey, 225 F.R.D. 120, 131 (D.N.J. 2004) ("The essential question with respect to waiver of the work-product [doctrine] by disclosure is whether the material has been kept away from adversaries.").  The burden of establishing waiver of the work-product doctrine falls, unlike the attorney-client privilege, on the party seeking to establish waiver.  See Maldonado, 225 F.R.D. at 132.

Any arguments about waiver of work-product or whether a document was prepared in anticipation of litigation must necessarily be made on a document-by-document basis, and not in the generalized way Shipyard proposes.

### 3.    Hoboken May Be Able to Assert the Common Interest Doctrine

Plaintiffs contend that Hoboken cannot assert the common interest doctrine and must turn over any documents withheld on that basis because the entries either pre-date the lawsuit or involve intervenors Fund for Better Water Front and Hudson Tea Buildings Condominium Association, Inc., whose interests are not completely aligned with Hoboken's.

The common-interest privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others."  In re Teleglobe Commc'ns Corp., 493 F.3d at 364.  The doctrine applies in civil and criminal cases as well as purely transactional contexts.  See In re Teleglobe, 493 F.3d at 364.   The most common statement of the degree of qualifying interest is that "the interest be identical, not similar, and be legal, not solely commercial," Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146, 1172 (D.S.C. 1974), the Third Circuit has not specifically adopted such a stringent approach, nor has it been endorsed by at least one commentator.  See Rice § 4:36 ("A standard of identical legal interests is unnecessarily narrow.").  Instead, the Court of Appeals has noted that "members of a community of interest must share *at least a substantially similar legal interest*."  In re Teleglobe,

493 F.3d at 366 (emphasis added).

The Court will not conclude, categorically and without reference to any specific communication, that Hoboken and any third-party (such as FBW and Hudson Tea) lack a requisite common interest.  All three entities have the similar legal interest of preventing development along the pier in Hoboken, perhaps for different reasons.  That their interests are not identically aligned does not eliminate the possibility that the common-interest doctrine could be appropriate.  See, e.g., Andritz Sprout, 174 F.R.D. at 634 ("The interests of the parties need not be identical, any may even be adverse in some respects.").  However, any formal ruling on this issue would require a more specific argument about a specific document in dispute.[10]

**B.**     **The Seven Categories & Samples**

The following are the seven categories of documents Shipyard created and for which samples were provided.  For each category, Shipyard provided generalized argument in favor of production and against Hoboken's claim of privilege.  Hoboken's papers do not effectively argue any category as a whole.  Instead, they select random privilege log entries and defend their withholding of that particular document.  As mentioned earlier, this disjointed process has resulted in Shipyard arguing for the production of a category of documents and requesting the *in camera* review of specific samples—while Hoboken barely responds to the category wide arguments and ignores the samples identified by Shipyard, instead choosing their own.

---

[10] Shipyard also argues that Hoboken cannot assert the deliberative process privilege because it is an "executive" privilege that does not apply to Hoboken as a legislative body. (Pl.'s Br. 9-10.) Hoboken fails to address this point.  It also does not address whether this Court should recognize a legislative privilege of any type.  See, e.g., Favors v. Cuomo, 285 F.R.D. 187, 209-10 (E.D.N.Y. 2012); cf. Harris v. City of Phila., 1995 WL 350296, at *7 (E.D. Pa. 1995) (Shapiro, J.) ("The deliberative process privilege may be asserted by decision-makers within all three branches of government.").  None of the samples that have been selected require the Court to decide this issue at this time.  However, if Shipyard intends to withhold documents on the grounds of deliberative process, it will be required to be specific regarding their basis for doing so.

**CATEGORY A:**
*Drafts of Ordinances and Communications Related Thereto*

This category includes approximately 9 privilege log entries for drafts of the Ordinances and 199 entries for correspondence relating thereto.  Generally speaking, Hoboken asserts work-product for the Ordinance drafts and attorney-client privilege and common interest as to the communications.  Shipyard argues that Hoboken has produced some drafts of the Ordinances and should not be permitted to cherry pick which ones they produce and those which they withhold. It also makes a policy argument that Hoboken should not be permitted to withhold communications touching on the Ordinances preparation because "[s]uch communications are part of the process of open government and should not be hidden from the public even if opposition to the ordinances were expected."  (Pl.'s Br. 17.)  No legal authority for that statement is offered.  Shipyard selected the following entries from Hoboken's privilege log as samples to review: 9, 33, 50, 57, 62, 76, 123, 153, 188, 200, 228, 265, 343, 370, 442, and 453.

Hoboken does not respond in any depth to the category-wide arguments and its brief fails to address the samples identified.  Thus, there is really no argument offered as to why the specific samples selected by Plaintiff have been properly withheld.  Instead, Hoboken refers to a few other documents — not selected by Plaintiffs — and explains why they are privileged.  Faced with this record, the Court has reviewed the samples submitted, and has upheld the privilege only when facially apparent from a review of the document.

| Log Entry | Bates Number(s) | Privilege Asserted | Decision |
|-----------|-----------------|--------------------|----------|
| No. 9 | HOB09849-9850 | Attorney-Client | 9849 is privileged. It is an email communication between attorney and client relating to preparation of the ordinance.<br><br>9850 is not privileged. It is an email communication of an administrative nature that does not reflect any legal advice. The fact that 9850 is part of the same email string as 9849 is irrelevant. See Spinello Cos., 2008 U.S. Dist LEXIS 53509, at *6 (D.N.J. July 14, 2008). |
| No. 33 | HOBO005047-48 | Attorney-Client | 5047 is not privileged. The communication is between non-lawyers and of a non-legal nature. An attorney is merely "cc'd" on the email, which appears to be for scheduling purposes.<br><br>Entry 5048 is not privileged. Although Defendants' counsel created the email, it is administrative in nature and does not involve legal advice. |

| No. 50 | HOB007250<br>HOB014621 | Attorney-Client | 7250 is privileged. It is an email between attorney and client that includes legal advice. |
| No. 57 | HOBO007383 | Attorney-Client | 7383 is privileged. It is an email between attorney and client relating to legal advice. |
| No. 62 | HOB007393-7407 | Attorney Work-Product | 7393-7407 are privileged. The document is an attorney "marked up"version of the ordinance. |
| No. 76 | HOB004937 | Attorney-Client | 4937 is not privileged. The communication is primarily between non-attorneys. An attorney is merely copied on the email. No legal advice is sought or received. |
| No. 123 | HOB004852 | Attorney-Client | 4852 is privileged. It is a communication from a client to an attorney that reflects research and legal advice. |

| No. 153 | HOB007720-7721 | Attorney-Client | 7720 and 7721 are an email chain that is *partially* privileged.<br><br>The email from counsel to client on October 8, 2013 at 8:07 a.m. and from client to counsel on October 8, 2013, at 9:50 a.m. are privileged.  These messages reflect legal advice.<br><br>The remainder of the email chain, however, must be produced. |
| No. 188 | HOB004535-36 | Attorney-Client | 4535-36 are privileged. These communications are between attorney and client and reflect legal advice.<br><br>. |
| No. 200 | HOB004502 | Attorney-Client | 4502 is not privileged.<br><br>The communication is not between attorney and client and no legal advice is included. |

| No. 228 | HOB04406 | Attorney-Client | 4406 is not privileged.<br><br>The communication is not between attorney and client and no legal advice is included. |
|---|---|---|---|
| No. 265 | HOB04130 | Deliberative Process Privilege | 4130 may be protected depending on if Hoboken can articulate a basis for the privilege. |
| No. 343 | HOB012303 | Common-Interest Doctrine | 12303 is protected.<br><br>The communication reflects sharing of privileged information between attorneys having a common interest. |
| No. 370 | HOB005206 | Attorney-Client | 5206 is privileged as a communication between attorney and client regarding legal advice relating to the ordinance. |
| No. 442 | HOB08936 | Attorney Work-Product and Common Interest Doctrine | 8936 is not protected.<br><br>The document does not reflect the sharing of confidential legal advice or information between lawyers. |

| No. 453 | HOB08722-8737 | Attorney Work-Product and Common Interest Doctrine | These documents are protected.<br><br>They reflect the sharing of protected information between and among attorneys with a common legal interest. |
| --- | --- | --- | --- |

## CATEGORY B:
### Memos prepared by Hoboken Officials
### concerning the Ordinances, objections and related communications

This category includes approximately 33 privilege log entries for memos and communications prepared by various members of the City's Administration—primarily the Community Planning Board Director and the Mayor—with respect to adoption of the Ordinances.  Plaintiffs primary argument is that these documents cannot be protected because the adoption of an ordinance is supposed to be a public process.  Again, this position is unsupported by citation to legal authority.  Shipyard selected the following privilege log entries as samples: 90, 140, 143, 166, 175, 178, 186, 190, 206.

Again, Hoboken does not address the specific samples selected.  (Def.'s Br. 19.)  Instead, its brief cites to mostly generic case law and does not explain in detail how memos such as these are protected.  As with category A, only communications that are indisputably privileged have been protected.

| Log Entry | Bates Number(s) | Privilege Asserted | Decision |
|---|---|---|---|
| No. 90 | HOB007445<br>HOB0010398-10473 | Attorney-Client | 10398-10472 is not privileged.  These bates numbers refer to an email cover memo and a draft ordinance sent to multiple recipients. There is no attorney-client communication. |
| No. 140 | HOB007669 | Attorney-Client | 7669 is privileged. This is an email from attorney to client containing legal advice. |
| No. 143 | HOB004763-4766 | Attorney-Client | Not privileged. Documents are a draft memorandum; counsel are carbon copied but it is not legal advice from an attorney. |
| No. 166 | HOB004769-4674 | Attorney-Client | The email from counsel at 4674 (10/16/13 at 10:46) is privileged and may be redacted as it contains attorney-client communications. |
| No. 175 | HOB007784<br>HOB010873-<br>HOB010876 | Attorney-Client | Not privileged. Does not contain attorney-client conversations. |

| No. 186 | HOB004534<br>HOB010896 | Attorney-Client | Not privileged.  Does not contain attorney-client conversations. |
| No. 190 | HOB004563-4565 | Attorney-Client | Description in the privilege log does not correspond to the documents provided to the court *in camera*.  The documents that have been provided do not involve an attorney and are not privileged. |
| No. 206 | HOB004457 | Attorney-Client | Not privileged.  Document is an intra-city email among non-lawyers that has nothing to do with legal advice. |

**CATEGORY C:**
*Documents/communications concerning expert reports*
*for the ordinances*

This category includes approximately 15 privilege log entries that refer to an expert report relating to the disputed Ordinances.  Shipyard's theory is that Hoboken was considering various entities to prepare an expert report and has withheld communications from both.  They also claim that Hoboken has improperly withheld communications with lawyers from other firms with whom they spoke and/or consulted.  Shipyard selected entries 10, 11, 14, 21, 25, and 28 for *in camera* review.

Hoboken does not address the specific samples selected.  Its argument on Category C is as follows: "Shipyard refers to the documents in Category C as documents and communications

concerning a proposed technical expert for the ordinances.  Shipyard's characterization of these emails is not accurate.  These emails were not made for the purpose of soliciting a technical expert.  Rather, in these emails, Hoboken attorney's in this case were communicating with other attorneys and Hoboken officers in order to develop legal theories for Hoboken regarding evidentiary support for the ordinances, and as such they are protected from disclosure by Shipyard by the attorney work-product and attorney client privileges."  (Def.'s Br. 20-21.)

| Log Entry | Bates Number | Privilege Asserted | Decision |
|---|---|---|---|
| No. 10 | HOB09851 | Attorney-Work Product | Protected work-product.  Attorney research and investigation regarding potential claims.

Plaintiff's assertion that such information can not qualify as work-product is not supported by any binding precedent cited.  Moreover, the Court finds that Plaintiff cannot establish a "substantial need" for the production of such information that would trump work-product protection. |
| No.  11 | HOB09852-9853 HOB09927 | Attorney Work Product | Protected work-product.  Attorney research and investigation regarding potential claims |

| No. 14 | HOB005121 HOB009926 | Common Interest Doctrine | Not protected. Insufficient showing that Defendants' attorney and the attorney contacted have "substantially similar" legal interests to warrant protection under the common interest doctrine. |
| No. 21 | HOB005086-87 HOB009987-10026 | Attorney-Client | Not attorney-client material.  There is no attorney-client communication. |
| No. 25 | HOB007152 | Attorney-Client | Not attorney-client material.  There is no attorney-client communication. |
| No. 28 | HOB007213-7214 | Attorney-Client | Not attorney-client material.  There is no attorney-client communication |

### CATEGORIES D&E:
*Documents/Communications concerning City Council &*
*Planning Board meetings about the ordinances.*

Shipyard next seeks the production of two categories of documents that concern City

Council and Planning Board meetings about the Ordinances.  It claims that these documents are

part of the legislative process and must be produced.  Shipyard claims that any assertions of the

deliberative process privilege fail because this is a legislative function and the deliberative

process privilege is executive in nature.  The selected samples include the following entries: 38, 115, 121, 129, 159, 471, and 472.

Hoboken, again addressing random privilege log entries and not the samples selected, points out two documents that fall within this category that it claims are express requests for legal advice from a member of Hoboken's administration to lead counsel.

| Log Entry | Bates Numbers | Privilege Asserted | Decision |
|---|---|---|---|
| No. 38 | HOB0010068 | Attorney-Client | Privileged.<br><br>Communication from attorney to client regarding litigation. |
| No. 115 | HOB004841 | Attorney-Client | Not privileged.<br><br>Communication between non-lawyers that does not discuss or disclose counsel's legal advice. |
| No. 121 | HOB004844 | Attorney-Client | Privileged.<br><br>Communication between attorney and client relating to litigation. |
| No. 129 | HOB004832-4833 | Attorney-Client | Not privileged. However, this appears to be a colloquial communication that is plainly not relevant to claims or defenses. |

| No. 159 | HOB004743 | Attorney-Client | Not privileged. Does not contain attorney-client communications. |
|---------|-----------|-----------------|------------------------------------------------------------------|
| No. 471 | HOB0018140-45 | Deliberative Process Privilege | Hoboken has thus far not established that such a document comes within the deliberative process privilege. |
| No. 472 | HOB0018146-50 | Deliberative Process Privilege | Hoboken has thus far not established that such a document comes within the deliberative process privilege. |

## CATEGORY F:
### *Communications concerning Hoboken's Community Rating System Application*

Shipyard seeks the production of privilege log entries that appear to relate to Hoboken's application for participation in FEMA's Community Rating System.  Shipyard claims this was an issue during hearings on the ordinances.  From reviewing documents that have already been produced and which Shipyard believes are similar to those in this category, it speculates that the documents being withheld are administrative and concern how things should be done and when, none of which would warrant protection.  Shipyard identifies entries 100, 102, 202, and 437 as samples for *in camera* review.

Again, Hoboken does not address the particular samples identified, instead stating why it believes that <u>other</u> entries, not selected, are protected by the attorney-client privilege as direct

communications between counsel in this case and client.

| Log Entry | Bates No. | Privilege Asserted | Decision |
|---|---|---|---|
| No. 100 | HOB0010502<br>HOB0010510 | Attorney-Client | Protected.  Attorney and client communication. |
| No. 102 | HOB007542 | Attorney-Client | Protected.  Attorney and client communication. |
| No. 202 | HOB004471-73<br>HOB007856-58<br>HOB011052<br>HOB011054 | Attorney-Client | Not attorney-client material.  There is no attorney-client communication |
| No. 437 | HOB005164<br>HOB008673<br>HOB009016-9017 | Attorney-Client | Protected.  Attorney and client communication. |

**CATEGORY G:**
*Communications concerning State pier legislation*

Hoboken has withheld certain documents that it claims include "internal discussion, analysis, and suggestions regarding pending legislation," which are "squarely within the context of the deliberative materials, and therefore properly withheld."  Plaintiff claims that the deliberative process privilege does not apply to internal Hoboken deliberations.  It has requested *in camera* review of two samples—entries 4 and 6.  Hoboken does not address either sample in its brief.

| Log Entry | Bates No. | Privilege Asserted | Decision |
|---|---|---|---|
| 4 | HOB018087-18103 | Deliberative Process<br><br>Attorney-Client | Not Attorney Client protected.<br><br>The Court is unable to decide whether the deliberative process privilege applies on the scant record presented. |
| 6 | HOB0178117-180128 | Deliberative Process<br><br>Attorney-Client | Not Attorney Client protected.<br><br>The Court is unable to decide whether the deliberative process privilege applies on the scant record presented. |

## IV.    INSTRUCTIONS TO THE PARTIES

At this point, the parties are directed to proceed as follows.

**One**, any documents that have been determined to be improperly withheld should be turned over within 15 days.

**Two**, the parties should confer in good faith and attempt to resolve any remaining disputes using the representational rulings made herein.  The parties should immediately advise the Court of any unresolvable problem.

**Three**, the parties are to immediately meet and confer regarding a schedule for the remainder of the case.  A proposed schedule is to be submitted within 10 days.

## V.    **CONCLUSION**

For the reasons stated above, Shipyard's informal motion to compel is **GRANTED IN PART AND DENIED IN PART**.


**s/Mark Falk_____**
**MARK FALK**
**United States Magistrate Judge**


**DATED: August 3, 2015**

30